If it pleases the Court, my name is Tony Gallagher. I'm the Federal Defender for the District of Montana. I represent Robert Timothy Swank, Sr. Your Honors, the enhancement for care in custody or supervisory control is, according to the guideline commentary, to be construed broadly. But that does not mean it is to be applied blindly. To properly apply the enhancement, the district court must look at the actual relationship and the evidence presented by the government must show by a preponderance not only that there was such an actual relationship, but also that the child victim was entrusted to the defendant. The United States Sentencing Guidelines, Section 2A, 3.1, comment, Application Note 3A, suggests a two-step process. First, a victim less than 18 years of age must be entrusted to the defendant, and that doesn't matter whether it's temporarily or permanently. When you say entrusted to the defendant, does that mean that it must be entrusted by, let's say, the child's guardian or parent? We would say so, Your Honor. There's — If, for example, let me give you an example. So if a neighbor comes over and says to my wife, can you watch John for an hour while I run to the store? And my wife says, sure, and I am home in the meantime. And my wife says, uh-oh, I've got to take — I've got a pot boiling on the stove I've got to take care of. Can you make sure that John doesn't, you know, stumble into the backyard? Have I been entrusted with this child? Under your example, absolutely. Under your example, absolutely. Even though the mother of the child did not entrust the child to me personally, but only to my wife. But your wife, who was the substitute caretaker while the mother was away, said to you specifically, Judge Bybee, watch this child while I take care of the pot on the stove. Now, in the case, in Swank's case, the child has been specifically entrusted to his wife in their home. Absolutely. And the child is there for a couple of days. Absolutely. So isn't it implicit in the relationship between the husband and the wife that when the wife leaves the child or the children with the husband in the bedroom, or whether it's in the kitchen where he's preparing dinner for them, or whether he's reading books to them on the couch in the living room, isn't that implicit without her having to say, John, can you watch Johnny for an hour? Most respectfully, no. Counsel, I don't follow that argument at all. This isn't just a strange child. It's his niece-in-law, isn't it? Seven-year-old niece of my client's wife. Well. And she, the child, there was no evidence whatsoever of a relationship between her uncle and the child. As a matter of fact, the child referred to my client by his nickname, Oscar, not even with giving him the pejorative kinship of uncle. Never even referred to him that way. You have to look to the actual relationship. And there was no relationship established here where, as I said, there's a two-step process. He's the adult in charge of that household, is he not? There was no evidence that he was the adult in charge of that household. He is an adult. He is an adult. Okay. He lives there. He lives there. He's married to his wife. He's married to his wife's niece. That's correct. She's a seven-year-old child. That is correct. They have a child of their own of three years old. That is correct. Okay. What was his relationship with his three-year-old child? His relationship with his three-year-old child is that it's his child. Right. And that he was there present at the child's birth, that he raised that child, that he cared for that child. You're saying that we should adopt the principle that even though a relative of one's wife, a child of seven years old, is brought into your house, of which you are the husband and with all of the assumptions that go with that, and you have care, custody, responsibility for the three-year-old, you bring in a seven-year-old and there's no implication of any of those responsibilities because she calls him Oscar. Judge Fischer, you know, you've said a couple of things that give pause with regard to the burden of the government. An assumption and an implication are not evidence of actual relationship or entrustment. As a matter of fact, the evidence was to the contrary, that there is no indication that the child's mother intended Oscar to have anything to do with this child. So if this child had walked into the kitchen and started lighting matches and throwing them into a wastebasket, he had no reason to intervene or no responsibility, maybe self-preservation, or if the child went out in the yard and started playing next to a big hole in the ground where she might have been injured, it's up to him whether he wanted to intervene. Exactly. Okay. And there's no evidence that he would have acted. There's no evidence beyond assumption, implication, or conjecture. That doesn't reach the government. Is there evidence in the record that he had prepared meals for the kids? He prepared breakfast for his children and fed the child at the same time. Wait a minute. He said children. How many children? He has two children. Well, one that is his and Annie's, and the other that Annie brought into the marriage. Okay. And those two children were both in the home? They both lived in the home. Did he serve breakfast to the victim here? He did. Okay. And, of course, these were their cousins. These were three cousins that were under the roof at the same time. That is correct, Your Honor. Okay. And he fed breakfast to the three children. He did. I mean, that just seems like such a very, very natural kind of relationship by virtue of his status as a husband and father in his own home. He's not a guest. He's not transitory. He's not somebody's second cousin who's just stayed one night on his way through someplace else. No. Stayed two nights. Right. And, as a matter of fact, Your Honor, I mean, I do have case support for my position, and it comes from the government's brief. They cite a case, United States v. Kenyon, out of the Eighth Circuit, which says that an adult is not entrusted with a child solely because he stays in the same house as the child and has some sort of relationship with the child. Yes. And specifically, they're referring to the Blue case, in which you had a fellow who was in the home transitorily, but had previously lived with the woman and her child a year before. Well, Your Honor, in that particular case, the victim viewed the defendant as grandfather. And the district court said that he took it vi- No. No, the victim didn't. The father said that the defendant said that he viewed himself as- As grandfather. As grandfather. There was no evidence that the child did. But it was upon that that the district court relied in giving the enhancement and the Eighth Circuit said there's no evidence that the child had any relationship with this person, Blue, and that's the same here. Blue was transitorily there. He was there for some kind of a party and molested the child during the night that he's there when he's drunk. But any relationship that he had with the child was due to the fact that the year  But he was in the home on that occasion as a guest and only as a transitory visitor. That's true. But in that particular case, there was no evidence that the victim viewed Blue as grandfather or trusted him or was entrusted to him. And that is exactly the situation here where we have Mr. Swank, who certainly has a blood relationship. Is there any evidence at all from which we can draw a conclusion that the mother of the victim, when she drops her daughter off and she goes to the Sundance for a couple of days, said, I'm entrusting this child to you, but not to your husband. Keep her away from your husband. There's no evidence of that. Yeah. There is no evidence of that. Yeah. But like we can't conjecture that she specifically said, keep the child away from Robert. We can't conjecture that she intended to give both adults the entrustment of the child. Okay. What you're saying then is that she drops him off, drops the seven-year-old girl off, and all she's counting on is that the child's safety and well-being will be taken care of by the woman of the house. And your client has no presence at all in her thinking. We shouldn't take that into account. It's just her relationship with the wife in the household and that if the child runs out in the street and starts playing in traffic, only if she better hope that the wife is home because the husband won't have any responsibility. Well, Your Honor, there's no evidence to indicate that she's important to that issue. It's just common sense, counsel. It may be common sense, but in this particular situation, common sense indicates that the mother of the child, there are two texts, two informational sources upon which she relies on Annie and not Robert. There's nothing about Robert in the record having been entrusted with this child. And just because he's the other adult in the premises doesn't make him a supervisor and control of the child. Okay. Why don't we hear from the government and then we'll give you a chance to respond. We've taken you over. Thank you very much. Yeah. Yeah. Good morning. Lori Sook for the United States. When a parent sends a child to a home shared by two married adults, she's entrusting the care of that child to both of the adults. And in this case, that was the finding of the district court and it deserves to be affirmed by this court. This child was in this home shared by these married adults for over two days. There is evidence in the record that they'd been married for two years. They had kids of their own. In the acceptance of responsibility letter written by the defendant himself, he describes it as our home. So there's no possibility that this parent who is entrusting her child to the care of her aunt would not believe that the only two adults living in the house would have care and control and some responsibility over the child. And that's the finding that was made here. There certainly is not a case exactly on point, but the case that was discussed by the defendant, the Kenyon case, is based upon a faulty reading of the Blue case. The Kenyon court did, of course, make the statement that Mr. Gallagher said they did, that it cannot be presumed to have been entrusted. The child cannot be presumed to have been entrusted just because they're residing together. But you need to read the same paragraph of that case before, where they, that court, the Kenyon court, restates the Blue holding and says, we held in Blue that a defendant who assaulted a child in the bathroom while his mother was present in the home and had not been entrusted with the child, even though the child and his mother had been living with the defendant for six months. There's a point there that is missed by the Kenyon court. Six months over a year ago. So the child wasn't, they weren't living together at the time, and that's the distinction there. I'm not going to trust the Kenyon court's characterization of Blue. I'm just going to read Blue. Right. And in Blue what we have is seven adults, drunk, three children. Right. The defendant wakes up, goes into the bathroom with a 21-month-old child. Right. And sexually abuses the boy. Right. This is, that's 100 miles away from this. It's 100 miles away from this case. The case that's closest. Actually, the Eighth Circuit is more than 100 miles away. Literally or figuratively, Your Honor. Maybe not from parts of Montana. That's true. We're very close where we come from. That's true. The U.S. v. Merit case is closer. That's where, even though that certainly is a case that talked about that commentary that has been taken out, about the psychological harm that can be created, the factual situation in the holding of the court is much closer. He was living with the victim's grandmother. And what the court said in that case is still true today about why this enhancement applies. He was able to be alone, and he was able to abuse in relative privacy and had greater access. And that's the reason why we apply this enhancement when we don't apply it to strangers, like in Blue. Because there is some. You know, I gave you Blue on a silver platter, but don't, this was not a stranger. It's not, he's not a stranger. Don't push Blue any further than we have to. Okay. I'm making the point that it's not that, and this is why we would apply it in a relationship. There was a potential for abuse. There was greater access to this child. That makes the offense more serious. And that, the factual situation here deserves the court's affirmance, and the reasoning behind it is also present. Okay. Thank you. Thank you. Would you like a minute? Yes. And with all due respect to Judge Beide and Judge Fischer, facts are stubborn things, according to John Adams. No respect to me. Well, Judge Fletcher, Judge Fletcher, you didn't, you didn't conjecture, imply, or assume. And that's what we can't do here. There was assumption, implication, and conjecture. Counsel, wait a minute. I take umbrage at your respect. I am not suggesting that the facts don't make a difference. It says, look to the actual relationship that existed between the defendant and the minor, and not simply to the legal status of the defendant-minor relationship. Okay. So what are facts? A fact is, as counsel for the government said, this is a married couple. Yes. They have children of their own. This is their house. They have a permanent relationship. They introduce, allow to be introduced into their home a seven-year-old child. Normally, one doesn't have to prove the fact of what a normal household relationship is to say, well, you can't even consider these circumstances into which the child has been introduced. There's a certain element of assumption that goes into what it means to have a husband and wife living together, and what you assume happens about parents. I don't think that's conjecture. That's not speculation. Now, it may be true these people had a very unusual relationship. But it is a fact, the status of what the relationship was is a fact. And there's certain, you know, inferences one draws from the fact that it's a married couple and that this child is not a stranger child. The child is the niece of the wife. But we also can assume that because the child's mother did not say, you and Robert watch my daughter, that she did not want Robert to have anything to do with her daughter. All right. Thank you very much. Thank both sides for their arguments. United States v. Swank is now submitted for decision.
judges: Fletcher, Fisher, Bybee